David C. **BROOKS**

v.

**JOHNSON AND JOHNSON, INC.,** et al.

**Civ. A. No. 88–2395.**

United States District Court, E.D. Pennsylvania.

May 10, 1988.

David Brooks, pro se.

MEMORANDUM

JOSEPH S. LORD, III, Senior District Judge.

Plaintiff's initial complaint was dismissed for lack of subject matter jurisdiction. For the reasons that follow, plaintiff's amended complaint will be dismissed in part.

Plaintiff alleges that he was given the medication Haldol by medical personnel. Haldol is allegedly manufactured by defendant McNeilab, allegedly a wholly owned subsidiary of defendant Johnson and Johnson. Plaintiff alleges that defendants deliberately "suppressed the fact that Haldol has ... approximately 350 ... serious and deadly side effects." Plaintiff alleges that defendants' actions violated the Mental Health Patient "Bill of Rights" as set forth at 42 U.S.C. § 10841.[1]

Section 10841 provides, in relevant part:

§ 10841. Restatement of Bill of Rights

It is the sense of the Congress that ... each State should review and revise, if necessary, its laws to ensure that mental health patients receive the protection and services they require, and that in making such review and revision, States should take into acount ... the following:

(1) A person admitted to a program or facility for the purpose of receiving mental health services should be accorded the following:

(A) The right to appropriate treatment and related services

. . . . .

(C) The right to ongoing participation, in a manner appropriate to such person's capabilities, in the planning of mental health services to be provided such person ... and, in connection with such participation, the right to be provided with a reasonable explanation, in terms and language appropriate to such person's condition and ability to understand, of—

. . . . .

(iii) the nature and significant possible adverse effects of recommended treatments;

■ A threshold issue is whether § 10841 creates any enforceable rights or duties. *See Student Coalition for Peace v. Lower Merion School,* 776 F.2d 431, 438 (3d Cir.1985). It appears that this is an issue of first impression.[2] The statutory language, setting forth "the sense of Congress," and recommending that States "should" review their laws regarding mental health patients is plainly precatory. Also, the "rights" set forth are for the State's consideration when undertaking this review. Significantly, this section neither requires nor prohibits any action on the part of the states or any other party. In addition, the legislative history is consistent with Congress's use of precatory statutory language. The Senate Report declares that the Bill of Rights is a "statement of Congressional viewpoint," and emphasizes that this section *"further encourages* each state to review and revise its laws to insure that mentally ill persons receive the protection and service they require."* S.Rep. at 9, *reprinted in* 1986 U.S.Code Cong. & Admin.News at 1369 (emphasis added). Finally, another section of the Act states that § 10841 "shall not be construed as establishing any new rights for mentally ill individuals." 42 U.S.C. § 10851.

Thus, § 10841 resembles the "Bill of Rights" provision in the Developmentally Disabled Assistance and Bill of Rights Act of 1975, 42 U.S.C. § 6010. Section 6010 sets forth certain Congressional "findings respecting the rights of persons with developmental disabilities." One such finding is

---

1. Plaintiff's complaint alleges violations of 42 U.S.C. § 9501. However, § 9501 was reenacted as part of the "Protection and Advocacy for Mentally Ill Individuals Act of 1986," P.L. 99-319, (the "Act") and is presently codified at 42 U.S.C. § 10841. *See* S.Rep. No. 109, 99th Cong., 2d. Sess. at 2, 3, 4, 9, *reprinted in* 1986 U.S.Code Cong. & Admin.News 1361 at 1362, 1363, 1364, 1369 (hereinafter cited as "S.Rep.").

2. A Lexis search reveals that no reported federal case has even mentioned § 10841. Similarly, no reported federal case considered whether § 9501 afforded substantive rights or created a private right of action.

that developmentally disabled persons "have a right to appropriate treatment." 42 U.S.C. § 6010(1). Notwithstanding these "findings" setting forth enumerated rights, the Supreme Court held that § 6010 did not create enforceable rights and obligations. *Pennhurst State School v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed. 2d 694 (1981). The *Pennhurst* Court found that § 6010 speaks "merely in precatory terms," *id.* at 18, 101 S.Ct. at 1540, and thus "does no more than express a Congressional preference for certain kinds of treatment." *Id.* at 19, 101 S.Ct. at 1541.

■■■ The language of § 10841 is even more clearly precatory than that analyzed in *Pennhurst.* While § 6010 flatly declared that the developmentally disabled "have" certain enumerated rights, § 10841 merely encourages states to review their laws and, in making this review, to "take into account" the recommendation that mental health patients "should be accorded" the rights enumerated in § 10841(1). The statutory language and legislative history compel the conclusion that § 10841 does not create enforceable rights and duties.

Even if § 10841 did create judicially enforceable rights or duties, I find that the section does not provide a private right of action. The Act provides mental health patients no express private right of action to enforce § 10841. Thus, the relevant inquiry is whether the Act provides an implied right of action.

"[T]he touchstone for the existence of an implied remedy is 'the intent of the legislature.'" *United States v. FMC Corp.*, 717 F.2d 775, 780 (3d Cir.1983) (*quoting Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n.*, 453 U.S. 1, 13, 101 S.Ct. 2615, 2622, 69 L.Ed.2d 435 (1981)). The inquiry into intent starts with "the statutory language, particularly [with] the provisions ... for enforcement and relief." *Sea Clammers*, 453 U.S. at 13, 101 S.Ct. at 2623. Subchapter 1 of the Act provides for an elaborate protection and advocacy system for mentally ill patients. It provides for the establishment of independent "systems" designed to "protect and advocate the rights of mentally ill patients." 42 U.S.C. § 10803(2)(A). These "systems" shall have access to both patient's records, 42 U.S.C. § 10805(a)(4), and State facilities, 42 U.S.C. § 10805(a)(3), and authority to "investigate incidents of abuse and neglect of mentally ill individuals." 42 U.S.C. § 10805(a)(1)(A). More importantly, the "systems" have authority to "pursue administrative, legal, and other appropriate remedies" on behalf of mentally ill individuals and to insure the protection of such individuals. 42 U.S.C. § 10805(a)(1)(B), (C).

The Supreme Court has emphasized the significance of the existence of alternative remedies: "It is an elementary canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Sea Clammers*, 453 U.S. at 14–15, 101 S.Ct. at 1538 (*quoting Trans-America Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1980)). *See also Touche Ross & Co. v. Redington*, 442 U.S. 560, 571–74, 99 S.Ct. 2479, 2486–87, 61 L.Ed.2d 82 (1979); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *Student Coalition*, 776 F.2d at 440. Indeed, in cases "where the Supreme Court has found no implied private cause of action, the legislation at issue has invariably contained other express remedies." *Student Coalition*, 776 F.2d at 440.

■■■ The legislative history supports my conclusion that Congress did not intend to authorize a private cause of action. The Senate approved a version of the Mental Health Systems Act that had a subsection providing that:

If a person demonstrates to the court that he or she has exhausted the grievance procedure to which he or she is entitled under Section 301(a)(12), or that exhaustion of such procedure cannot afford timely relief, he or she may bring a civil action for the violation of any of his or her rights under this part in an appropriate United States district court, without regard to the amount in controversy.

.    .    .    .    .

Subsection (d) makes clear that only persons to whom the rights of Section 301(a) [the Bill of Rights] apply are given a cause of action under this part.

S.Rep. No. 712, 96th Cong., 2d Sess., at 122–23, *reprinted in* 1980 U.S.Code Cong. & Admin.News 3372, 3488. However, this provision was not part of the Act as originally enacted, or as reenacted as § 10841. Rather, Congress provided for the elaborate protection and advocacy system discussed above. The legislative history clearly reveals that Congress squarely considered, and rejected, the provision of a private right of action.

As in *Sea Clammers,* the

structure of the [Act] and [its] legislative history both lead [me] to conclude that Congress intended that private remedies in addition to those expressly provided should not be implied. Where, as here, Congress has made clear that implied private actions are not contemplated, the courts are not authorized to ignore this legislative judgment.

*Sea Clammers,* 453 U.S. at 18–19, 101 S.Ct. at 2625.

Although the Act does not afford plaintiff rights that may be enforced through a private cause of action, plaintiff also alleges that defendants are liable under theories of negligence and products liability. It appears from the complaint that plaintiff and defendant McNeilab are both citizens of Pennsylvania. However, from the allegations of the complaint, it appears that diversity jurisdiction is proper as to state law claims against defendant Johnson and Johnson. There is nothing in the complaint regarding the citizenship "Executive Officers (John Does)". Since the burden is on plaintiff to allege the grounds of subject matter jurisdiction, the suit cannot proceed against those anonymous individuals. For this reason, plaintiff's state law claims may proceed only against defendant Johnson and Johnson.

An appropriate order follows.

## ORDER

AND NOW, this 10th day of May, 1988, it is ORDERED AS FOLLOWS:

1. Plaintiff's claims against all parties other than Johnson and Johnson, Inc. are DISMISSED as frivolous pursuant to 28 U.S.C. § 1915(d).

2. Plaintiff's claims under 42 U.S.C. § 9501, recodified at 42 U.S.C. § 10841, are DISMISSED as frivolous pursuant to 28 U.S.C. § 1915(d).

3. As for the remaining claims, the complaint is to be filed, the summons is to issue, service is to be made upon defendant, and a copy of this Memorandum and Order is to be directed to the plaintiff and defendant.

4. All original pleadings and other papers submitted for consideration to the Court in this case are to be filed with the Clerk of this Court, and shall be accompanied by proof that such documents have been served upon or mailed to counsel for the opposing party (or directly to any party acting *pro se* ). The proof shall show the day and manner of service, i.e.:

"I, (name), do hereby certify that a true and correct copy of the foregoing (name of pleading or other paper) has been served upon the (name(s) of person(s) served) by placing the same in the U.S. Mail, properly addressed, this (date) day of (month), (year).

_____

(Signature)"

If any pleading or other paper submitted for filing does not include a certificate of service upon the opposing party or counsel for the opposing party, it may be disregarded by the Court.

5. Any request for court action shall be set forth in a motion, properly filed and served. The parties shall file copies of all motions and all papers relating to motions with the clerk of the court, including proof of service upon opposing parties. All other requirements of the Federal Rules of Civil Procedure and Local Rules are to be followed.

6. No direct communication is to take place with the district judge with regard to this case. All relevant information and papers are to be directed to the Clerk of the Court.

7. In the event the summons is returned unexecuted it is plaintiff's responsibility to ask the Clerk of the Court to issue an alias summons and to provide the clerk with defendant's correct address, so that service can be made.

8. The parties should notify the clerk's office when there is an address change. Failure to do so could result in court orders or other information not being timely delivered, which could affect the parties' legal rights.