Kevin MONAHAN, Plaintiff,

v.

**DORCHESTER COUNSELING CENTER, INC., et al., Defendants.**

Civ. A. No. 90–10881–T.

United States District Court,
D. Massachusetts.

Aug. 5, 1991.

action for injunctive relief and for damages arising out of injuries that he suffered during transportation between mental health facilities. Defendants, the Commonwealth of Massachusetts and twenty-one individuals and entities with responsibility for Plaintiff's health care, have all moved to dismiss.

## II

### FACTS [1]

■ On or about April 1, 1989, Plaintiff voluntarily committed himself to Millie's Cottage (the "Cottage"), a group home for the mentally ill operated under contract with the Massachusetts Department of Mental Health ("DMH"). Amended Complaint at ¶ 25. At the same time, Plaintiff was an outpatient at the Dr. John C. Corrigan Mental Health Center ("Corrigan"), a treatment facility for the mentally ill operated by DMH. *Id.* at ¶ 26. On the evening of April 1, 1989, Plaintiff notified the Cottage staff that he might be having an anxiety attack. *Id.* at ¶ 31. A staff employee then attempted to transport Plaintiff to Corrigan in a van for treatment, but Plaintiff twice jumped out of the vehicle. *Id.* The staff employee eventually summoned Corrigan campus police, who then drove Plaintiff to Corrigan and back. *Id.*

Plaintiff continued to exhibit anxious behavior through April 6, 1989 and received treatment and medication for his symptoms. *Id.* at ¶¶ 34–38. On April 6, Plaintiff made various suicidal statements to a Cottage employee, defendant David Kazen ("Kazen"), and requested to be transported to Corrigan. Kazen then transported Plaintiff by van to Corrigan. *Id.* at ¶ 43. At Corrigan, defendant Michael St. Germaine ("St. Germaine"), a crisis intervention staff worker employed by defendant Dorchester Counseling Center, Inc. ("DCC"), interviewed Plaintiff but refused to admit him as an in-patient at Corrigan.

Robert G. Flanders, Jr., Maureen G. Glynn, Flanders & Medeiros, Providence, R.I., for plaintiff.

David Richard Geiger, Peter M. Casey, Foley, Hoag & Eliot, Peter Carleton Knight, Rhonda L. Ritenberg, Morrison, Mahoney & Miller, Michelle Kaczynski, Atty. Gen., Torts Div., Boston, Mass., Kenneth G. Littman, Peppard & Littman, Fall River, Mass., for defendants.

### MEMORANDUM

TAURO, District Judge.

## I

### INTRODUCTION

Plaintiff Kevin Monahan ("Plaintiff"), a mental health patient, brings the present

---

1. In considering the present motion to dismiss, this court presents the following version of events in the light most favorable to Plaintiff.

*See The Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 20 (1st Cir.1989).

*Id.* at ¶ 47. St. Germaine then telephoned defendant Martin Bauermeister ("Bauermeister"), a Corrigan psychiatrist employed by DMH. *Id.* at 48. St. Germaine incorrectly reported to Bauermeister the dosage of medication that Plaintiff had received during a prior visit to Corrigan and, acting on the basis of that information, Bauermeister prescribed the same dosage. *Id.* at ¶¶ 49–50. A nurse, defendant Cynthia Pillsbury ("Pillsbury"), then administered this medication to Plaintiff. *Id.* at 50. Bauermeister did not, however, order the admission of Plaintiff to Corrigan and St. Germaine continued to refuse to admit him. *Id.* at 51.

After St. Germaine informed Plaintiff and Kazen that Plaintiff would not be admitted to Corrigan, Kazen escorted Plaintiff back to the van for the return trip to the Cottage. *Id.* at 53–54. Plaintiff opened the van door and jumped out. *Id.* at 54. Kazen brought Plaintiff back into Corrigan, where St. Germaine again refused to admit him. *Id.* at 55–56. Kazen then escorted Plaintiff back to the van and placed him in it. *Id.* at 58. Without any assistance and without any safety locks or restraints in the van, Kazen began the drive back to the Cottage. *Id.* While the van was stopped at a traffic light, Plaintiff jumped out and walked up a highway exit ramp on Interstate Route 195. *Id.* Kazen did not notify the police, but instead returned to Corrigan and informed St. Germaine of what had happened. *Id.* at 59. By the time Kazen did notify the police, Plaintiff had been struck by an automobile on Route 195. *Id.* at 60. As a result of this accident, Plaintiff suffered severe internal injuries, including brain damage and multiple broken bones. *Id.* at 61.

Plaintiff brings the present action against the Commonwealth of Massachusetts, DCC, Kazen, Bauermeister, St. Ger-

maine, Pillsbury and sixteen other defendants as operators of mental health facilities or as individuals with responsibility for Plaintiff's care. Plaintiff's complaint contains twenty different counts, alleging causes of action under state law and under two federal statutes, 42 U.S.C. § 1983 and 42 U.S.C. § 10841. Defendants have moved to dismiss on a variety of grounds. As this court finds dismissal of the federal counts appropriate and declines to exercise jurisdiction over the remaining state claims, this court confines its analysis to the claims under § 1983 and § 10841.

### III

### ANALYSIS

#### A. *42 U.S.C. § 1983*

42 U.S.C. § 1983 provides

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

Plaintiff may state a cause of action under § 1983 if his complaint satisfies either of two alternative tests for a substantive due process violation.[2] *See Pittsley v. Warish,* 927 F.2d 3, 6 (1st Cir.1991).

Under the first theory, it is not required that the plaintiff[ ] prove a violation of a specific liberty or property interest; however, the state's conduct must be such that it "shocks the conscience." To succeed under the second theory, a plaintiff must demonstrate a violation of an iden-

**2.** As the First Circuit recently explained, § 1983 claims may allege violations of either procedural or substantive due process. *See Pittsley v. Warish,* 927 F.2d 3, 6 (1st Cir.1991).

Procedural due process requires that the procedures provided by the state in effecting the deprivation of liberty or property are adequate in light of the affected interest. Sub-

stantive due process, however, imposes limits on what a state may do regardless of what procedural protection is provided. *Id.* Here, as in *Pittsley,* Plaintiff challenges the state's conduct, not the adequacy of any procedure. Accordingly, Plaintiff's complaint must meet the standards of one of the two alternative tests for substantive due process violations.

tified liberty or property interest protected by the due process clause.

*Id.* (citations omitted).

■ Here, Plaintiff asserts claims for failure to treat, failure to transport him safely in a motor vehicle, failure to notify the police that he might be in danger, failure to train mental health workers to treat him properly, failure to admit him on request to a mental health hospital, failure to supervise him properly, failure to provide an appropriate diagnosis, and failure to notify police of his absence. *See* Amended Complaint at ¶¶ 68, 70, 72, 74, 76, 78, and 80. In essence, Plaintiff claims that the state failed to provide him with adequate psychiatric care and treatment, including reasonably safe conditions and adequate supervision. While these shortcomings may be actionable under state law, they are not "so egregious as to 'shock the conscience' offending even 'hardened sensibilities.'" *Pittsley*, 927 F.2d at 6 (quoting *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209–10, 96 L.Ed. 183 (1952)). The classic example of state activity that does shock the conscience remains the use of a stomach pump to extract evidence from an unwilling suspect, which the Supreme Court condemned in *Rochin*. *See* 342 U.S. at 172, 72 S.Ct. at 209–10. Here, in contrast, Plaintiff does not allege that defendants intentionally caused his injuries. Rather, his complaint alleges, at most, instances of gross negligence, which do not amount to due process violations. *See Tallman v. Reagan*, 846 F.2d 494, 495 (8th Cir.1988). Accordingly, if Plaintiff is to state a cause of action for violation of his right to substantive due process, he must do so under the second theory by alleging a violation of a specific constitutional guarantee or liberty interest protected by the due process clause. *See Pittsley*, 927 F.2d at 7.

■ Plaintiff argues that the due process clause provides this protection to his interest in adequate psychiatric care and treatment, including reasonably safe conditions and adequate supervision. Plaintiff concedes that a state has no general constitutional duty to provide substantive services for those within its borders, but argues that "once the state assumes the duty of providing certain services, as Massachusetts did here, it assumes an affirmative duty imposed by the Due Process Clause of the Fourteenth Amendment for the individual's care and well being." Plaintiff's Objection to the Motion to Dismiss at 21.[3]

■ Plaintiff argues that once the state provided psychiatric care to him, it initiated a special relationship with him which obligated the state to take affirmative steps to ensure his well-being. Yet, while the provision of care may have imposed various common law or contractual duties upon the state, it did not suffice to impose a constitutional duty to treat. Such a duty arises only "when the State takes a person into its custody and holds him there against his will." *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 199–200, 109 S.Ct. 998, 1005, 103 L.Ed.2d 249 (1989). As the Supreme Court has explained,

> The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his

---

**3.** In his proposed Second Amended Complaint, Plaintiff seeks to add a claim that 42 U.S.C. § 10841, the "Restatement of Bill of Rights for Mental Health Patients," creates federal rights which are enforceable under § 1983. § 10851 of the statute specifically states, however, that § 10841 "shall not be construed as creating any new rights for mentally ill individuals." 42 U.S.C. § 10851. *See infra* at 47. Accordingly, that section does not give rise to any rights that may be the subject of a claim under § 1983.

Plaintiff also argues that regulations of the Massachusetts Department of Mental Health, Mass.Regs.Code tit. 104, § 3.10 *et seq.*, have created substantive rights enforceable in a § 1983 action. *See* Plaintiff's Supplemental Memorandum in Opposition to Motion to Dismiss at 9. The Supreme Judicial Court, however, has held that the legislature's intent in authorizing these regulations was "one of aspiration and encouragement, rather than of the creation of a formal system of actionable guaranties." *Woodbridge v. Worcester State Hospital*, 384 Mass. 38, 423 N.E.2d 782, 785 (1981). These regulations, therefore, do not give rise to rights that may be the subject of a § 1983 claim, either.

freedom *to act on his own behalf.* In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the deprivation of liberty triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means. *Id.* at 200, 109 S.Ct. at 1006 (citations omitted). Here, Plaintiff was not "in custody." Rather, he admits that he was a voluntary patient, *see* Amended Complaint at ¶ 25 and Plaintiff's Supplemental Memorandum In Opposition to Motion to Dismiss at 1–3, and, accordingly, that the state did not restrain his freedom to act.[4] *See* Mass. Regs.Code tit. 104 § 3.03 ("Voluntary admission status shall be totally voluntary, and may be terminated by the patient or superintendent or other head of a facility at any time without notice."). In these circumstances, under *DeShaney,* the state has no constitutional obligation to provide care and its alleged failure to do so does not, therefore, state a claim under § 1983.

B. *42 U.S.C. § 10841*

█ In his proposed Second Amended Complaint, plaintiff seeks to add a direct claim for violations of 42 U.S.C. § 10841, the "Restatement of Bill of Rights for Mental Health Patients." The plain language of the statute and its legislative history both indicate, however, that this statute does not create a private right of action. § 10841 does not speak in mandatory terms, but, rather, it merely recommends that states "should" review their laws regarding mental patients. Specifically, the statute provides, "It is the sense of the Congress that, ... each State *should* review and revise, if necessary, its laws to ensure that mental health patients receive the protection and services they require ..." 42 U.S.C. § 10841 (emphasis added). In conducting these reviews, "States should take into account the recommendations of the President's Commission on Mental Health" as well as a list of recommended "rights" contained in the statute. *Id.* Finally, § 10851 of the statute specifically states that § 10841 "shall not be construed as creating any new rights for mentally ill individuals." 42 U.S.C. § 10851.

The legislative history of 42 U.S.C. 10841 also indicates that Congress did not intend to create a private right of action. The Senate originally approved a version of the Act which allowed civil actions to be brought "for the violation of any ... rights under this part in an appropriate United States district court, without regard to the amount in controversy." Congress omitted this provision from the final version of the Act. *See* S.Rep. No. 712, 96th Cong., 2d Sess., at 122–23 (*quoted in Brooks v. Johnson and Johnson, Inc.,* 685 F.Supp. 107, 110 (E.D.Pa.1988)). Instead, Congress created an advocacy system for mentally ill patients. *See* 42 U.S.C. §§ 10803(2)(A), 10805(a)(3), (4); *Robbins v. Budke,* 739 F.Supp. 1479 (D.N.M.1990). In short, the "legislative history clearly reveals that Congress squarely considered, and rejected, the provision of a private right of action." *Brooks v. Johnson and Johnson, Inc.,* 685 F.Supp. 107, 110 (E.D.Pa.1988). Accordingly, Plaintiff fails to state a claim under 42 U.S.C. § 10841.

C. *State Law Claims*

Plaintiff has failed to allege a claim under federal law. In addition, plaintiff's proposed Second Amended Complaint contains no new allegations which would state a federal claim. *See supra* note 3. As there is no other independent basis for federal jurisdiction in this action, this court

---

**4.** Plaintiff argues that his psychiatric condition made him incapable of true "voluntariness" and, therefore, that his status as a voluntary patient should not be controlling. *DeShaney* makes clear, however, that it is the "affirmative act" of the state in imposing a restraint, and not the plaintiff's subjective mental state or predicament, that gives rise to a constitutional duty.

*See* 489 U.S. at 199–200, 109 S.Ct. at 1005–06. To the extent that the First Circuit's comments fifteen years ago in *Harper v. Cserr,* 544 F.2d 1121, 1124 (1st Cir.1976) (allegations of plaintiff's helplessness and wanton callousness on the part of caretakers may state a claim under § 1983), suggest a contrary result, *DeShaney,* of course, controls.

exercises its discretion and declines to exercise pendent jurisdiction over the remaining state law claims. *See Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 348–50, 108 S.Ct. 614, 617–19, 98 L.Ed.2d 720 (1988). Defendants' Motion to Dismiss is, therefore, ALLOWED.

An Order will issue.

### ORDER

For the reasons stated in the accompanying Memorandum, plaintiff's Motion to Amend Complaint is hereby DENIED and defendants' Motion to Dismiss is hereby ALLOWED.