**N.A.M.I. (NATIONAL ALLIANCE OF MENTALLY ILL OF ESSEX), et al., Plaintiffs,**

v.

**ESSEX COUNTY BOARD OF FREEHOLDERS, et al., Defendants.**

No. CIV.99–4605.

United States District Court, D. New Jersey.

April 11, 2000.

David B. Wasserman, Wasserman & Schachman, Bloomfield, NJ, for Plaintiffs.

Warren B. Kasdan, Schwartz, Tobia, Stanziale, Rosensweig & Sedita, P.A., Montclair, NJ, for Defendants Essex County Bd. of Chosen Freeholders and James W. Treffinger, Essex County Executive.

Michael R. Griffinger, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C., Newark, NJ, for Defendant Essex County Improvement Authority.

Rhonda S. Berliner–Gold, DAG, Office of New Jersey Attorney General, Trenton, NJ, for Defendant New Jersey Dept. of Human Services.

## OPINION

HOCHBERG, District Judge.

This matter comes before the Court upon motions by defendants Essex County Board of Freeholders, Essex County Improvement Authority and the New Jersey State Department of Human Services to dismiss plaintiffs' complaint in its entirety for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(1), 12(b)(6). This Court has reviewed the submissions of the parties without oral argument pursuant to Fed.R.Civ.P. 78, and for the reasons stated below, the motions to dismiss will be granted.[1]

## STATEMENT OF FACTS

Plaintiffs are members of the National Alliance of Mentally Ill of Essex, (hereinafter "NAMI"), an organization whose principal activities are vigorous advocacy for the rights of the mentally ill and for improved mental health services for the mentally ill; Ashley Goodman, citizen of Essex County and parent of a patient at the Essex County Hospital Center; John Gaykowski, a citizen of Essex County; and Arthur Siebelist, a taxpayer and resident of Essex County and NAMI's past president. (Complt.¶ 1.) Defendants are the Essex County Board of Chosen Freeholders, Essex County Executive, James Treffinger, Essex County Improvement Authority, and the New Jersey State Department of Human Services.

Essex County Hospital Center (hereinafter "ECHC") houses 350 patients; 250 are long term patients who are wards of the County of Essex. (Complt.¶ 5, 7.) For the last 100 years, ECHC has been located on 60–80 acres of land in suburban Essex County, which is part of 600 acres of Essex County know as "Hilltop." (Complt.¶ 5, 7.) These surroundings provide ECHC's patients with substantial recreational space. (Complt.¶ 17).

On April 14, 1999, the Board of Freeholders of Essex County adopted a resolution stating that the County of Essex had determined that ECHC is "physically deficient, lacking in modern conveniences and in need of significant major repairs and renovations in order to bring it up to date." (Pl. Opp. Br. Ex. 1 at 1.) The County determined that the most efficient and financially sound option is to relocate ECHC to an existing facility and identified the former United Hospital campus as a suitable and desirable location for ECHC. (Pl. Opp. Br. Ex. 1 at 1.) The resolution approved a Memorandum of Understanding entered into by the County and New United Corp. for the purchase of a portion of the former United Hospital campus and authorized the County Executive to negotiate and enter into an agreement for the purchase of the land and to procure professional services to plan and design renovations, alterations and construction. (Pl. Opp. Br. Ex. 1 at 2.)

Plaintiffs bring this action on behalf of themselves and the taxpayers and resi-

---

**1.** In light of this disposition, plaintiffs' motion for restraints is denied.

dents of Essex County, and others similarly situated, to restrain defendants from moving the patients from ECHC to an alternative site in Newark or elsewhere. (Complt.¶ 8.) Plaintiffs also seek to restrain defendants from purchasing and renovating part of the United Hospital campus and from selling the present site on which ECHC sits. (*Id.*)

Plaintiffs assert violations of the Protection and Advocacy for Mentally Ill Individuals Act of 1986 (hereinafter "PAMII"), 42 U.S.C. §§ 9501, 10801, and 10841, the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12132, New Jersey statutory and common law and the New Jersey Constitution. They contend that the proposed purchase of the United Hospital property and the proposed move of the ECHC patients to the new facility is a per se violation of the patients' rights because: (1) the recreational space is insufficient (complt.¶ 15); (2) there may be electronic surveillance of the new facility (complt.¶ 15); (3) patients may be subject to monitoring in the form of ankle bracelets (complt.¶ 15); (4) a 12 to 15 foot fence may be erected around the new facility (complt.¶ 15); and (5) the urban setting of the new facility threatens the safety of the ECHC patients (complt.¶ 17, 18).

The defendants have moved to dismiss plaintiffs' complaint for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1) because: (1) plaintiffs lack statutory standing; (2) plaintiffs lack Article III standing; and (3) the case is not ripe for adjudication. Defendants also move to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a cause of action upon which relief can be granted.

## DISCUSSION

### I. Standard of Review

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. *Pension Benefit Guar. Corp. v. White Consol. Industries,* 998 F.2d 1192, 1196 (3d Cir.1993), *cert. denied,* 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994). Motions to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a cause of action result in a determination on the merits at an early stage of plaintiff's case. *Mortensen v. First Federal Savings and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). As a result, "plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn." *Id.* In order to grant a 12(b)(6) motion to dismiss, the Court must find that plaintiffs will be unable to prevail even if they prove all of the allegations in the complaint, basing its decision solely on the legal sufficiency of the complaint. *Id.*

In evaluating a motion to dismiss under 12(b)(1) for lack of subject matter jurisdiction, the Court must first determine whether defendant's motion attacks the complaint as deficient on its face, or whether defendant's motion attacks the existence of subject matter jurisdiction in fact. *Mortensen,* 549 F.2d at 891. Where defendant's 12(b)(1) motion facially attacks the complaint, the Court must take all allegations in the complaint as true. *Id.* Where however, defendant attacks the Court's subject matter jurisdiction in fact, no presumptive truthfulness attaches to plaintiff's allegations and the Court may weigh the evidence to satisfy itself that subject matter jurisdiction exists in fact. *Id.* at 891. Plaintiff bears the burden of proof that subject matter jurisdiction does in fact exist. *Id.*

Here, the defendants challenge the complaint on its face. As such, the allegations of plaintiffs' complaint are taken as true in this Court's 12(b)(1) and 12(b)(6) analyses.

### II. Article III Case or Controversy Requirement

Article III, section 2 of the United States Constitution mandates the existence

of a "case or controversy" between the parties as a prerequisite to jurisdiction. U.S. Const. Art. III, § 2; *see also Whitmore v. Arkansas*, 495 U.S. 149, 154–155, 110 S.Ct. 1717, 1723, 109 L.Ed.2d 135 (1990). This requirement is equally applicable to actions seeking injunctive or declaratory relief. *Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d 319, 322–323 (3d Cir.1998). The doctrines of standing, ripeness and mootness are all part and parcel of the case or controversy inquiry, and serve to limit the judiciary's competence to adjudicate disputes between parties. *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984).

The instant action fails to present an actual case or controversy on two alternative grounds: The action before the Court is not ripe for adjudication and plaintiffs do not have standing to bring this action.

A. *Ripeness*

■ The ripeness doctrine functions to prevent federal courts "through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). In determining whether a case is ripe for adjudication, the Court looks to the (1) the fitness of the issues for judicial resolution and (2) the hardship to the parties of withholding court consideration. *Abbott Laboratories*, 387 U.S. at 149, 87 S.Ct. at 1515; *see also Ohio Forestry Association, Inc. v. Sierra Club*, 523 U.S. 726, 733, 118 S.Ct. 1665, 1670, 140 L.Ed.2d 921 (1998); *Texas v. United States*, 523 U.S. 296, 300–301, 118 S.Ct. 1257, 1260, 140 L.Ed.2d 406 (1998).

Under the first prong of this test, the Court considers whether the issues presented are purely legal, as opposed to factual, and the degree to which the Court's determination is final. In doing so, the Court considers the following factors: (i) whether the claim involves uncertain and contingent events that may not occur as anticipated or at all; (ii) the extent to which a claim is bound up in the facts; and (iii) whether the parties to the action are sufficiently adverse. *Philadelphia Fed'n of Teachers*, 150 F.3d at 323. In the second prong of the inquiry, the Court looks at whether the challenged action creates a direct and immediate dilemma for the parties. *Id.* at 323.[2]

■ Taking all of plaintiffs' allegations as true, this action is not ripe for adjudication because plaintiffs' complaint asks this Court to reject a "plan" to move ECHC's patients that is in its infancy and replete with uncertain and contingent events that may not occur any time in the near future or at all. *See Texas*, 523 U.S. at 300, 118 S.Ct. at 1259. Plaintiffs assert that defendants have chosen to purchase two buildings but that "[t]he details of the purchase are not precisely known due to the many changes in the form of the purchase." (Complt.¶ 12.) Plaintiffs further assert that defendants "have indicated they will move the patients from the present site to the two buildings being purchased" (complt.¶ 14), that they are "advised that these plans provide for a 12 or 15 foot berm or fence" (complt.¶ 15), and that they "believe there has been reference" to electronic surveillance or ankle bracelets (complt.¶ 15).

Plaintiffs claims are clearly "bound up in the facts," many of which are purely conjecture, and the alleged dispute between

---

**2.** In *Ohio Forestry Association, Inc. v. Sierra Club*, 523 U.S. 726, 733, 118 S.Ct. 1665, 1670, 140 L.Ed.2d 921 (1998), the Supreme Court undertook the ripeness inquiry by determining "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." All three of these factors also favor dismissal here and demonstrate that the present case is not ripe for adjudication.

these parties is contingent upon too many unknowns to adequately confer jurisdiction upon this Court. Moreover, since a decision by this Court will not affect the legal relationship between these parties, this Court does not believe that the parties are sufficiently adverse. Finally, denying judicial review at this time is not a hardship to any party as it will not create a direct and immediate dilemma to the plaintiffs or to the ECHC patients. Adjudicating this case now, based upon plaintiffs' speculation as to what might happen in the future, will result in a disposition that may never be viable, useful or grounded in fact.

### B. *Article III Standing*

■ Plaintiffs' complaint also fails because not one of the plaintiffs has standing to bring the action before the Court. In order to establish Article III standing:

> "[A] litigant first must clearly demonstrate that he has suffered an 'injury in fact.' That injury ... must be concrete in both a qualitative and temporal sense. The complainant must allege an injury to himself that is 'distinct and palpable,' ... as opposed to merely 'abstract' ... and the alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical.'" *Whitmore*, 495 U.S. at 155, 110 S.Ct. at 1723 (citations omitted).

The Court's standing inquiry "requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen*, 468 U.S. at 752, 104 S.Ct. at 3325. It requires the Court to determine "whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin,*

422 U.S. 490, 498–499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (citations omitted). Additionally, as an organization, in order for plaintiff NAMI to file suit on behalf of its members it must show that "(1) the organization's members would have standing to sue on their own, (2) the interests the organizations seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires individual participation of its members." *Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.,* 123 F.3d 111, 119 (3d Cir. 1997) (citations omitted).

Here, plaintiffs plead no "injury in fact" to themselves at all. Rather, they impermissibly attempt to raise the rights of the individual patients at ECHC. *See Allen,* 468 U.S. at 751, 104 S.Ct. at 3324 (standing doctrine prohibits a litigant from raising another party's rights); *Warth,* 422 U.S. at 499, 95 S.Ct. at 2205 (jurisdiction can only be invoked when plaintiff himself has suffered threatened or actual injury). Plaintiff NAMI has not alleged that any one of its members has suffered an injury in fact, actual or imminent. Nor have individual plaintiffs Ashley Goodman, John Gaykowski or Arthur Siebelist. While Mr. Goodman's adult child is a patient at ECHC, the complaint fails to allege that Mr. Goodman is suing on his child's behalf or even that he has the right to do so.

Plaintiffs here are concerned citizens. While this is an admirable and important function, it is insufficient to confer standing on these plaintiffs to adjudicate this case against these defendants in federal court.[3] As this Court is "powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing," *Whitmore,* 495 U.S. at 155–156, 110

---

**3.** Plaintiffs' offer to amend their complaint and add Mr. Dada Balogun, a voluntary patient at ECHC (Pl. Opp. Br. at 11, Ex. 4), would be futile because this case is not ripe for adjudication. Moreover, Mr. Balogun would himself not have standing because any injury he may attempt to plead does not appear to be sufficiently imminent, concrete and definite to warrant this Court's exercise of its jurisdiction. *Whitmore,* 495 U.S. at 155, 110 S.Ct. at 1723.

S.Ct. at 1723, plaintiffs' complaint is dismissed on this alternative ground.

### III. *Statutory Standing*

In determining whether subject matter jurisdiction exists, threshold inquiries for the Court are whether the federal statutes upon which plaintiffs base their claims create any enforceable rights or duties and, if so, whether they create a private right of action. *See e.g., National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453, 456, 94 S.Ct. 690, 692, 38 L.Ed.2d 646 (1974); *Student Coalition for Peace v. Lower Merion School,* 776 F.2d 431, 438 (3d Cir.1985).

■ Plaintiffs have asserted violations of the Protection and Advocacy for Mentally Ill Individuals Act of 1986, 42 U.S.C. §§ 9501, 10801, and 10841 and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12132. Since neither enforceable rights and duties nor a private right of action are created by 42 U.S.C. §§ 9501, 10801, and 10841, plaintiffs' claims for violation of same are dismissed.

42 U.S.C. section 10841, entitled "Restatement of Bill of Rights for Mental Health Patients," was enacted in 1986 and restates the provisions of 42 U.S.C. § 9501, the mental health "Bill of Rights." [4] This section provides in pertinent part that:

> "It is the sense of Congress that, as previously stated in title V of the Mental Health Systems Act [42 U.S.C.A. 9501 et seq.], each State should review and revise, if necessary, its laws to ensure that mental health patients receive the protection and services they require, and that in making such review and revision, States should take into account the recommendations of the President's Com-

mission on Mental Health and the following:"

> "(1) A person admitted to a program or facility for the purpose of receiving mental health services should be accorded the following:"

> (A) The right to appropriate treatment and related services in a setting and under conditions that—

>> (i) are the most supportive of such person's personal liberty; and

>> (ii) restrict such liberty only to the extent necessarily consistent with such person's treatment needs, applicable rules of law, and applicable judicial orders.

> \*   \*   \*   \*   \*   \*

> "(G) The right to a humane treatment environment that affords reasonable protection form harm and appropriate privacy as to such person with regard to personal needs."

This Court agrees with the Court of Appeals for the First Circuit and the District Court for the Eastern District of Pennsylvania that the Restatement of Bill of Rights for Mental Health Patients does not create any judicially enforceable rights or duties. *Monahan v. Dorchester Counseling Center, Inc.,* 961 F.2d 987, 994 (1st Cir.1992); *Brooks v. Johnson & Johnson, Inc.,* 685 F.Supp. 107, 109 (E.D.Pa.1988); *see also Croft v. Harder,* 730 F.Supp. 342, 351 (D.Kan.1989)(42 U.S.C. § 9501 creates no substantive federal rights). As the *Brooks* Court pointed out, "this section neither requires not prohibits any action on the part of the states or any other party." *Brooks,* 685 F.Supp. at 108. The plain language of the statute indicates that the language is merely precatory, setting forth "the sense of Congress," that the "State *should* review and revise, [its laws] if necessary." 42 U.S.C. § 10841; *see Monahan,* 961 F.2d at 994–995; *Brooks,*

---

4. Plaintiffs' complaint asserts violations of both provisions, complt. ¶¶ 20. They are treated together for purposes of this motion. Additionally, although plaintiff cites section 10801(a) in attempting to assert a cause of

action under 10841 (complt.¶ 20), the Court finds nothing in the language of that section and plaintiffs' reference thereto that changes this Court's analysis in any way.

685 F.Supp. at 109. The legislative history of the statute supports the same conclusion, indicating that section 10841 is a statement of Congressional viewpoint that encourages each state to review and revise its laws. *See Brooks,* 685 F.Supp. at 108 (citing S.Rep. No. 109, 99th Cong., 2d Sess. at 9, reprinted in 1986 U.S.Code Cong. Admin. News at 1369). Moreover, section 10851 expressly states that section 10841 "shall not be construed as establishing any new rights for mentally ill individuals." 42 U.S.C. § 10851.[5]

This Court also finds that the Restatement of Bill of Rights for Mental Health Patients does not create a private right of action, express or implied.[6] *Brooks,* 685 F.Supp. at 109–110. Indeed, a provision of the Mental Health Systems Act that expressly included a private right of action was not ultimately included in the Act as originally enacted, or as reenacted as section 10841. *See* S.Rep. No. 712, 96th Cong., 2d Sess., at 122–123, reprinted in 1980 U.S.Code Cong. & Admin. News at 3372, 3488. Thus, Congress considered and rejected a private right of action. *See Brooks,* 685 F.Supp. at 109–110. Additionally, PAMII expressly provides for advocacy of patients' rights under § 10805, through state systems established under § 10803. Where, as here, "a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 13, 101 S.Ct. 2615, 2622, 69 L.Ed.2d 435 (1981).

Since neither enforceable rights and duties nor a private right of action are created by the Restatement of Bill of Rights for Mental Health Patients, the first count of plaintiffs' complaint is dismissed on these alternative grounds.[7]

The parties do not dispute that Title II of the ADA creates a private right of action. *See* 28 C.F.R. §§ 35.170, 35.172 (West 1999). However, plaintiffs' ADA claims are infirm because plaintiffs do not have standing to assert the rights of ECHC's patients and no claim is stated under the Americans with Disabilities Act. *See infra* Section IV.

## IV. *The Americans With Disabilities Act*

Though the Court need not reach this issue, plaintiffs have failed to state a cause of action for violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12132. The Americans with Disabilities Act states in pertinent part:

> "Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132.

---

**5.** The *Brooks* Court bolstered its holding that section 10841 does not create enforceable rights and duties by comparing section 10841 with 42 U.S.C. § 6010, the language of the latter having been found to be precatory by the Supreme Court. *See Brooks,* 685 F.Supp. at 108–109 (discussing *Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 18, 101 S.Ct. 1531, 1540, 67 L.Ed.2d 694 (1981)). In its analysis of section 10841, the Court of Appeals for the First Circuit adopted the *Brooks* Court's comparison, *Monahan,* 961 F.2d at 995, and this Court likewise finds it compelling.

**6.** The Court of Appeals for the First Circuit did not reach this issue. *Monahan,* 961 F.2d at 994.

**7.** For the first time in their opposition papers, plaintiffs assert that defendants have violated the ECHC patients' federally protected constitutional liberty interests under the Due Process Clause of the Fourteenth Amendment to reasonably safe conditions of confinement. (Pl. Opp. Br. at 1.) This Court need not consider claims that have not been pleaded in the complaint. However, even if this claim had been pleaded, it would likewise fail. First, a claim asserting unsafe conditions of confinement surely is not ripe where, as here, those conditions are uncertain and depend upon contingent events that may never occur. *See supra,* at 784–85. Second, no plaintiff here has standing to bring this action. *See supra,* at 785–86.

First, no plaintiff here asserts that he or she is a qualified individual within the meaning of the ADA. Again, plaintiffs impermissibly attempt to assert the rights of the ECHC patients. *See Allen*, 468 U.S. at 751, 104 S.Ct. at 3324 (standing doctrine prohibits a litigant from raising another party's rights).

■ Second, even if plaintiffs were to amend the complaint to add an ECHC patient who is a qualified individual within the meaning of the ADA, this claim would still fail. The ECHC patients here are not being *discriminated against* because they are mental health patients, but are being *provided* for because they are mental health patients. Plaintiffs' attempt to state a cause of action for violation of the Americans with Disabilities Act is misplaced because that statute does not guarantee any particular level of medical care for disabled persons, nor assurance of a continuation of service in the hospital locale previously provided. *See Cercpac v. Health and Hospitals Corp.*, 147 F.3d 165, 168 (2d Cir.1998). The complaint here alleges only that the closing of a facility will reduce care or services, and does not allege that any plaintiff, by reason of his or her disability is being denied care afforded to individuals without disabilities. As such, the fifth count of the complaint fails to state a claim upon which relief can be granted. *Id.* at 167–168.

## V. *State Law Claims*

Having found that this Court lacks subject matter jurisdiction to hear plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over plaintiffs' pendent state law claims without need to address them on their merits. 28 U.S.C. § 1367(c)(3).

**8.** Since the Court does not have jurisdiction over this action, it is unnecessary to reach the issues of (i) appointing guardians to ECHC patients (Count 2), (ii) whether the ECHC patients have rights to the land on which

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss for lack of subject matter jurisdiction is granted.[8] Plaintiffs' cross-motion for restraints is denied.

So Ordered.

ECHC sits (Count 3), (iii) whether the Mt. Laurel Doctrine is implicated by plaintiffs' allegations (Count 4), and (iv) the provision of long term care for ECHC patients (Count 6).