Rick R. **ELLISON**, Plaintiff–Appellant,

v.

**COCKE COUNTY, TENNESSEE and David Kickliter, M.D.,** Defendants–Appellees.

No. 94–5577.

United States Court of Appeals, Sixth Circuit.

Submitted April 10, 1995.

Decided Aug. 24, 1995.

468

Thomas M. Leveille (briefed), Knoxville, TN, for Rick R. Ellison.

Robert H. Watson, Jr. (briefed), Watson, Hollow & Reeves, Knoxville, TN, for Cocke County.

M. Lacy West (briefed), Julia C. West (briefed), West & Rose, Kingsport, TN, for David J. Kickliter, M.D.

Before: MARTIN and RYAN, Circuit Judges; GILMORE, District Judge.*

MARTIN, J., delivered the opinion of the court, in which GILMORE, District Judge, joined. RYAN, J. (pp. 472–73), delivered a separate opinion concurring in the result.

BOYCE F. MARTIN, JR., Circuit Judge.

Rick R. Ellison appeals the district court order granting the defendants' motion to dismiss for failure to state a claim upon which relief can be granted. He contends that the district court erred in determining that 42 U.S.C. § 290ee–3 (now codified at 42 U.S.C. § 290dd–2) provides no private right of action and in concluding that he could not maintain an action under 42 U.S.C. § 1983. Because we find that no private right of action exists under Section 290dd–2 and that Section 290dd–2 creates no substantive rights that would enable Ellison to invoke a Section 1983 claim, we affirm the decision of the district court.

I.

On January 3, 1992, Ellison was taken to Peninsula Hospital in Blount County, Tennessee, pursuant to an Order of Transport signed by the Honorable Marcus Mooneyham, Judge of the General Sessions Court of Cooke County, Tennessee. Based upon allegations that he was under the influence of drugs and suffering from hallucinations, Ellison remained hospitalized from January 3 to January 10.

After his release, Ellison was terminated from his position with the Cocke County Ambulance Service. The Board of Directors of the Cocke County Ambulance Service then met to establish conditions for his return to work. Dissatisfied with those conditions, Ellison filed a grievance with the Cocke County Legislative Body and requested a hearing. His grievance was referred to an appointed Grievance Committee for hearing.

The Board of Directors and the Grievance Committee requested copies of Ellison's medical records from the hospital, and Ellison executed the necessary releases. Those records concerned Ellison's identity, diagnosis, prognosis, and treatment. The copies provided were purportedly accompanied by a sticker indicating their confidential status. Moreover, Ellison claims that he specifically requested that his grievance and related materials be kept confidential.

However, this request was not honored. At an open meeting of the Grievance Committee, David Kickliter, M.D., read excerpts from Ellison's records that identified allegations of Ellison's drug use and that gave the results of drug tests. This information was later published in two local newspapers, and the story was also covered by a radio station.

II.

Ellison filed suit against Dr. Kickliter and Cocke County on March 4, 1993, claiming violations of 42 U.S.C. § 290ee–3 and related regulations. Specifically, the complaint alleged that Kickliter and Cocke County violated the statute's confidentiality provision by disclosing Ellison's medical records at an open meeting and also asserted a state law claim for invasion of privacy.

Both Kickliter and Cocke County filed motions to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), claiming that Section 290ee–3 provides no private right of action. Ellison subsequently filed an amended complaint on September 13, 1993, restating his prior allegations and alleging a Section 1983 violation, based upon the same facts. The district court entered an order granting the defendants' motions to dismiss as to Ellison's Section 290ee–3 and Section 1983 claims and dismissing his state law claims without prejudice. This timely appeal followed.

* The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation.

### III.

In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the supreme court articulated the standards for ascertaining when a private right of action can be implied from a statute. It explained:

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,'—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 78, 95 S.Ct. at 2088 (citations omitted). The court has subsequently clarified that in determining whether a private right of action is implicit in a statute, the "focal point is Congress' intent in enacting the statute." *Thompson v. Thompson*, 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988). Therefore, "unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Id.* (quoting *Northwest Airlines, Inc. v. Transp. Workers*, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981)). In this case, none of the considerations that guide our inquiry points in favor of implying a private right of action. Indeed, an examination of Section 290dd–2 in light of the *Cort* factors reveals that Congress did not intend to create a private right of action when enacting the statute.

Against this backdrop, we begin our analysis by examining the language of the statute itself. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979) (citations omitted). Section 290dd–2(a) announces the general confidential status of "[r]ecords of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States." Section 290dd–2(b) provides that under certain circumstances these records may be disclosed, "in accordance with the prior written consent of the patient." Moreover, Section 290dd–2(f) establishes a criminal penalty applicable to "[a]ny person who violates any provision of this section or any regulation issued pursuant to this section."

Nothing in the language of Section 290dd–2 suggests that Congress intended to create a private right of action for violations of the confidentiality provision. On the contrary, that language establishes that Congress intended the statute to be enforced through the imposition of criminal penalties. Of course the fact that a statute provides for a criminal penalty "does not necessarily preclude the implication of private cause of action for damages." *Cort*, 422 U.S. at 79, 95 S.Ct. at 2088. However, courts are "especially reluctant" to recognize additional remedies where a statute expressly provides a remedy. *Lewis*, 444 U.S. at 19, 100 S.Ct. at 247. Furthermore, although the confidentiality provision is designed to benefit "patients," a specific and identifiable class of which Ellison was a member, "the question is not simply who would benefit from the act, but whether Congress intended to confer federal rights upon those beneficiaries." *California v. Sierra Club*, 451 U.S. 287, 294, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981) (citation omitted). Thus, the fact that Ellison, as a patient, might benefit from the confidentiality provision does not end our inquiry.

We next examine the context of the statute at issue, "with an eye toward determining Congress' perception of the law that it was shaping." *Thompson*, 484 U.S. at 180, 108 S.Ct. at 516 (citations omitted). The underlying purpose of the Drug Abuse Office and Treatment Act of 1972, from which the confidentiality provision of the antecedent Section 290ee–3 derived, was "to bring about the most effective deployment of Federal

resources against the devastating growth of drug abuse in the United States." H.R.Rep. No. 92–775, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.C.C.A.N. 2045, 2045. The thrust of the Act was wholly administrative and bureaucratic: to coordinate federal drug abuse prevention efforts. *Id.* at 2048; *Ohta v. Muraski,* No. 3:93 CV 00554 (JAC), 1993 WL 366525, *14 (D.Conn. Aug. 19, 1993).

The confidentiality of medical records maintained in conjunction with drug treatment programs was essential to that endeavor. Congress felt that "the strictest adherence" to the confidentiality provision was needed, lest individuals in need of drug abuse treatment be dissuaded from seeking help. H.R.Conf.Rep. No. 92–920, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.C.C.A.N. 2062, 2072. However, there is no indication that the confidentiality provision was intended to be enforceable by aggrieved private parties; the purpose of the provision was not to create private rights as much as it was to create public penalties in order to deter disclosure. *Ohta,* 1993 WL 366525, at *14. Thus, nothing in the statute's legislative history reveals an intent to create a private right of action; it merely emphasizes the importance of preserving the confidentiality of patient records in order to encourage individuals to seek treatment. *See* H.R.Conf. Rep. No. 92–920, *reprinted in* 1972 U.S.C.C.A.N. at 2071–72; *Nashua Brookside Hosp., Inc. v. Cappuccio,* No. 91–12158–Z, 1993 WL 62366, at *3 (D.Mass. Feb. 16, 1993).

In 1992, the Alcohol, Drug Abuse and Mental Health Administration was reorganized, and the confidentiality provisions for drug and alcohol abuse programs were combined into the present Section 290dd–2. Again, the thrust of this reorganization was solely administrative; the effort was "an attempt to strengthen the federal effort to combat drug abuse, alcohol abuse and mental illness." S.Rep. No. 102–131, 102d Cong., 2d Sess. 2–3 (1992), *reprinted in* 1992 U.S.C.C.A.N. 277, 278–79; *Ohta,* 1993 WL 366525, at *15. We see no evidence that Congress viewed Section 290dd–2 as anything other than a statute reorganizing certain aspects of the federal administration of the program.

■ Our next step is to assess whether it would be "consistent with the underlying purposes of the legislative scheme" to imply a federal private right of action for a violation of the confidentiality provisions of Section 290dd–2. *Cort,* 422 U.S. at 78, 95 S.Ct. at 2087–88. Section 290dd–2 is a criminal statute to be enforced through the United States Attorney, guided by the statute itself and by corresponding regulations established by the Secretary of Health and Human Services, *e.g.,* 42 U.S.C. § 290dd–2(f); 42 C.F.R. §§ 2.3(b)(3) et seq., but not by aggrieved private plaintiffs. *Ohta,* 1993 WL 366525, at *15. The "legislative scheme" clearly leaves no place for suits by private plaintiffs. *Id.* at *16.

■ Finally, we turn to the "traditionally relegated to state law" inquiry. *Cort,* 422 U.S. at 78, 95 S.Ct. at 2088. Both Kickliter and Cocke County contend that because Tennessee recognizes a common law cause of action for "invasion of privacy," *Langford v. Vanderbilt Univ.,* 199 Tenn. 389, 287 S.W.2d 32 (1956), it would be inappropriate for us to imply a private right of action here. We agree. We also note that "the absence of relief under the common law action does not necessarily require a finding that a federal cause of action should be implied to provide the plaintiff with relief." *Logan v. District of Columbia,* 447 F.Supp. 1328, 1335 (D.D.C. 1978).

Thus, all of the *Cort* factors favor a finding that no private cause of action exists under Section 290dd–2, as they clearly reveal that Congress did not intend to provide a private remedy for violations of the confidentiality provision. Accordingly, we conclude that Section 290dd–2 creates no implied private right of action for damages.

■ We also believe that 290dd–2 creates no substantive rights that would enable Ellison to invoke a Section 1983 claim. Significantly, not every violation of federal law gives rise to a Section 1983 claim. *Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103, 109, 110 S.Ct. 444, 450, 107 L.Ed.2d 420 (1989). Specifically, a Section 1983 claim for a violation of a federal statute does not lie "where Congress has foreclosed such enforcement of the statute in the enactment itself and where the statute did not create

enforceable rights, privileges, or immunities within the meaning of § 1983." *Wright v. Roanoke Redevelopment and Hous. Auth.*, 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987). Here, we find that Congress did not "unambiguously confer" upon the patient-beneficiaries the right to enforce the statute's confidentiality provision through a Section 1983 claim. *Suter v. Artist M.*, 503 U.S. 347, 363, 112 S.Ct. 1360, 1370, 118 L.Ed.2d 1 (1992).

For the foregoing reasons, we AFFIRM the judgment of the district court.

RYAN, Circuit Judge, concurring separately.

I concur in the result reached in my brother's opinion but not for the reasons stated.

In my judgment, plaintiff Ellison does not have an implied cause of action under 42 U.S.C. § 290dd–2 either directly or through 42 U.S.C. § 1983 because Ellison is not a member of the class of persons " 'for whose *especial* benefit the statute was enacted.' " *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) (quoting *Texas & Pac. Ry. v. Rigsby*, 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916)).

The language of § 290dd–2 strongly suggests that the statute's broad purpose is to combat, in a number of ways, this nation's crippling drug abuse problem and to do so primarily by encouraging addicts to seek treatment voluntarily. The House and Senate passed different versions of the bill that ultimately became the statute, and a House/Senate conference committee produced the version that was enacted into law. The conference committee adopted that portion of the Senate bill that contained a provision for confidentiality of patient records and later became § 290ee–3(a). The conference committee stated:

> The conferees wish to stress their conviction that the strictest adherence to the provisions of this section is absolutely essential to the success of all drug abuse prevention programs. Every patient and former patient must be assured that his right to privacy will be protected. Without that assurance, fear of public disclosure of drug abuse or of records that will attach for life will discourage thousands from *seeking* the treatment they must have if this tragic national problem is to be overcome.

> Every person having control over or access to patients' records must understand that disclosure is permitted only under the circumstances and conditions set forth in this section. Records are not to be made available to investigators for the purpose of law enforcement or for any other private or public purpose or in any manner not specified in this section.

H.R.Rep. No. 775, 92d Cong., 2d Sess. (1972) (emphasis added).

This language suggests that the committee intended to protect the privacy of medical records in an attempt to encourage addicts to seek treatment for their drug abuse. Certainly nothing in this report, and nothing in the statute subsequently enacted, indicates that Congress intended that there be a private cause of action for the violation of the confidentiality requirement. We know, of course, that Congress' silence is not dispositive. *See Thompson v. Thompson*, 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988).

*Thompson* stands as the Supreme Court's most recent guidance regarding implied causes of action. The Court emphasized that the "focal point" of a court's inquiry must be "Congress' intent in enacting the statute." *Id.* The Court made clear that congressional intent need not be explicit and that courts should use the four factors from *Cort v. Ash* to determine whether Congress intended a private remedy for a violation of the statute.

The court today concludes that the *Cort* analysis suggests that we should not infer a private remedy for violation of § 290dd–2. I believe that the *Cort* factors strongly suggest that inferring a private cause of action is reasonable. However, I think it is unnecessary to reach this ultimate issue because whether or not we should infer a private remedy for some other plaintiff, we should not do so for Ellison. The first *Cort* factor requires that the plaintiff be " 'one of the class for whose *especial* benefit the statute was enacted,' " *Cort*, 422 U.S. at 78, 95 S.Ct. at 2088, and Ellison is not.

In my judgment, the class for whose "especial benefit" § 290dd–2 was enacted compris-

es persons who voluntarily seek treatment for their drug abuse. It is not disputed that Ellison is not such a person. He received treatment only after he was forcefully taken to a hospital under court order after it was discovered that he was suffering from hallucinations from drug abuse, a situation which posed a serious threat to his own and the public's safety because, at the time, he was working as a Cocke County ambulance driver. Stated otherwise, Ellison was part of the problem Congress wanted to remedy rather than a person for whom Congress intended to create an "especial benefit."

For these reasons, I concur in affirming the judgment of the district court.